Rudy **MALLONEE,** Appellant,

v.

William H. **GROW,** Appellee.

No. 1699.

Supreme Court of Alaska.

Oct. 27, 1972.

James K. Tallman, Anchorage, for appellant.

Walter·H. Garretson, Anchorage, for appellee.

## OPINION

Before BONEY, C. J., and RABINO-WITZ, CONNOR, ERWIN and BOOCH-EVER, JJ.

BOOCHEVER, Justice.

In 1959 Kenneth Anton brought suit against the parties to this appeal, Rudy Mallonee and William Grow [1] alleging that they had committed trespass to land and had wrongfully converted a tractor. Mallonee cross-claimed against Grow on the basis that he acted as Grow's agent and was entitled to indemnity from Grow for any amount that Anton might recover. At the conclusion of the proceedings in 1961 the defendants were found liable to the plaintiff for a total of $2,250 in damages. The superior court also concluded that Grow should indemnify Mallonee "for such

---

1. Bonded Bureau of Collections and Investigations, Inc., an Alaska corporation, was also named as a defendant, but suffered a default judgment. The cor- poration had ceased to do business in the state and, at the time, was without assets.

amount as Rudy Mallonee may be compelled to pay, or pay, to the plaintiff in satisfaction of plaintiff's judgment, and only . . . said amount." Similarly, the final judgment of November 20, 1961 provided that Grow was to be liable to Mallonee for "the amount recovered by [the plaintiff] from Rudy Mallonee, by execution or voluntarily" plus attorney's fees of $150.00 and costs of $68.59.

Before the plaintiff made any effort to collect the judgment against Mallonee and Grow,[2] Mallonee began to seek satisfaction of his claim against Grow. On May 27, 1964 he executed on some personal property of Grow and obtained $25.25 from the sale. Thus, Grow's direct liability was reduced to $193.34, plus interest, and his contingent liability remained $2,250.00, plus interest.

On July 25, 1966 Mallonee again sought a writ of execution on the 1961 judgment. Pursuant to the procedures of the superior court, Mallonee presented to the clerk of that court a mimeographed form of writ of execution. By filling in the blanks on the form Mallonee claimed to have recovered an absolute judgment against Grow for the full amount of the judgment for which they were severally liable.[3] No mention was made of the contingent nature of his claim against Grow. The writ, as filled out by Mallonee, was issued by the clerk. Statutory notice[4] was given that all of Grow's right, title and interest in 562.82 acres of real property[5] would be sold at public auction. The auction was held on September 12, 1966, at which time the property was sold to Mallonee for $3,271.-78, approximately the amount of his still contingent claim against Grow, plus costs, attorney's fees and interest. At the time of the execution proceedings Grow did not have any interest in the property levied upon. He had granted all of his interest therein to his brother, James Grow, in February of 1961, prior to the rendition of judgment against him and Mallonee. Grow did not reacquire an interest in the property until September of 1970, when his brother granted to him a one-half interest in the same property.

After the sale of the property Mallonee moved the superior court for an order con-

---

2. The plaintiff has not sought to collect his judgment either voluntarily or by execution. In 1969 he moved the superior court for execution after five years, as required by Alaska Rule of Civil Procedure 69(d) but the motion was denied. The effect of that denial is that the plaintiff could not thereafter collect his judgment by execution. Alaska R.Civ.P. 69 (d).

3. The major portion of the form appears as follows; those spaces filled in by Mallonee are italicized:

Whereas, *Rudy Mallonee*, recovered judgment against *William H. Grow, and Bonded Bureau of Collections & Investigations, Inc.*, in the Superior Court for the State of Alaska, *Third* District on the *20th* day of *November, 1961*, for the sum of *$2100* with interest thereon at the rate of *6%, amounting to $902.80 to July 18, 1966, together with an attorney's fee of $100.00; $68.98 assessed by the Clerk of the Court, amounting to $3,171.78* . . . .

4. The notice required prior to selling real property on execution is governed by AS 09.35.140, which provides:

(2) Notice of the sale of real property is given by posting a [written or printed notice of the time and place of sale] particularly describing the property not less than four weeks prior to the day of sale in three public places, as provided in (1) of this section, and publishing a copy of the notice four times, once a week for four successive weeks in a newspaper of general circulation published nearest to the place of sale.

Pursuant to this statute, notice of sale was posted on the property in the State Police Service Section and the Superior Court Bulletin Board in the Anchorage State Court Building and was published in the Anchorage Daily Times on August 12, 19 and 26, and September 2 and 9.

5. The property was described as follows:
Seward Meridian, Alaska
T. 16 N, R. 2 W.
Sec. 1, SE ¼ SW ¼, Lot 7
Sec. 2, Lot 5
Sec. 11, Lots 1, 3, 4, 5 and 6, N ½ NE ¼
Sec. 12, N ½ NW ¼, Lots 2 and 3

firming sale.[6] No notice of the motion was served upon Grow or his attorney as required by Alaska Rule of Civil Procedure 5(a). On October 4, 1966 the motion was granted and the order issued by Superior Court Judge James Fitzgerald. One year later a deed to the property was issued to Mallonee by the Alaska State Police.

During the period which followed the order confirming the sale Mallonee paid taxes assessed against the property. However, Grow obtained a waiver of taxes for his brother for the year 1964 and otherwise believed that he had paid all taxes due on the property for his brother. Apparently Grow was unaware of the fact that Mallonee was paying the taxes because of the waiver and the fact that he was paying taxes in lump sums on other property owned by him and his brother in the area.

Grow first became aware of Mallonee's interest in the property when in 1970 he attempted to record the grant to him of a one-half interest in the same property. On January 24, 1972 Grow filed a motion to set aside the order confirming the sale of the property to Mallonee. A hearing was scheduled before Judge Fitzgerald, but he was disqualified from hearing the matter upon Mallonee's motion. The hearing was eventually held before Judge Victor D.

Carlson and the motion was granted. The order stated that the motion was granted for the following reasons:

(1) Mallonee had not complied with the provisions of AS 09.35.180(a) by giving notice to Grow or his attorney of the motion for an order confirming the sale of the property;

(2) Mallonee had perpetrated a fraud upon the court by seeking an execution for an amount in excess of that actually due him under the judgment, such amount never having been collected by the plaintiff and having been barred by the court's refusal to allow execution after five years; and

(3) Mallonee had executed on property not owned by Grow.

Grow was ordered to "deposit in the registry of the court $218.59 plus interest at the rate of eight percent per annum from November 20, 1961[7] for dispersal to . . . Rudy Mallonee . . ." plus the amount of taxes paid by him on the property and interest at eight percent. It is from that order that Mallonee has petitioned this court for review.[8]

■ Since the order was a final one terminating the proceeding, we regard it as a final judgment from which an appeal may be taken.[9] We have, therefore, treated this matter as an appeal.[10]

---

6. AS 09.35.180 governs the issuance of orders confirming sales on execution.

7. Grow has not cross-petitioned for a reduction in the amount that he was ordered to pay into the court. We note that the $218.59 should have been reduced by the $25.25 that Mallonee received from the 1964 execution sale of Grow's personal property. Moreover, since no cross-petition has been filed, we do not reach the question of whether Grow should have been required to reimburse Mallonee for any amount.

8. Supreme Court Rule 23 specifies in part that a:
party may petition this court for review of any order or decision of the superior court, not otherwise appealable under Rule 6

9. Supreme Court Rule 6 specifies:
*What May Be Appealed.*
An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test.the sufficiency of the indictment or on the ground that the sentence is too lenient.
Final orders constitute a final judgment for purposes of this rule.
Wood v. Gray, 359 P.2d 951 (Alaska 1961); Fischback & Moore of Alaska, Inc. v. Lynn, 407 P.2d 174 (Alaska 1965); City of Fairbanks v. Electric Distribution System, 413 P.2d 165 (Alaska 1966).

10. Supreme Court Rule 52 provides:
These rules are designed to facilitate business and advance justice. They

Turning to the merits of the appeal, we must first address ourselves to Mallonee's argument that the superior court was without jurisdiction to hear Grow's motion to vacate the order confirming the sale of the property. This allegation is based on the provisions of Alaska Rule of Civil Procedure 60(b) [11] and, more specifically, the time limitations contained therein.

Alaska Rule of Civil Procedure 60(b) sets forth six reasons for relieving a party from the effect of an order of a court. Reasons (1) through (3) encompass mistake, inadvertence, surprise or excusable neglect, newly discovered evidence and fraud perpetrated by an adverse party. An action for relief based on these grounds must be sought not more than one year after the order is entered. Mallonee has asserted that this one-year limitation applies to an action alleging the fraud which the superior court found and upon which it based its order.

We cannot agree with this argument. Alaska Rule of Civil Procedure 60(b), which is the same as Federal Rule of Civil Procedure 60(b), specifically states that none of the provisions of the rule "limit the power of a court . . . to set aside a judgment for fraud upon the court." As noted by the Advisory Committee on [Federal] Rules, this saving clause "expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief . . . ." [12] That power is inherent in the court upon which the fraud was practiced [13] and its exercise is governed by principles which were fashioned long before the existence of our state and federal court systems.[14] Although courts have been hesitant to exercise this equitable power over decisions which have been rendered during prior court terms, they have, where the situation requires, devitalized judgments rendered long

---

may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice. Under authority of this rule, we have previously treated appeals as petitions for review:

Stokes v. Van Seventer, 355 P.2d 594 (Alaska 1960); Jefferson v. Spenard Builder's Supply, Inc., 366 P.2d 714 (Alaska 1961).

11. Alaska R.Civ.P. 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant not personally served, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis and audita querela are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

12. 28 U.S.C.A., Federal Rules of Civil Procedure 60, Notes of Advisory Committee on Rules p. 157 (1970); See also 3 W. Barron & A. Holtzoff, Federal Practice and Procedure Civil § 1326, at 408 (1958).

13. 7 J. Moore, Moore's Federal Practice ¶ 60.33, at 505 (1971).

14. See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250, 1255 (1944).

before challenges thereto arose.[15] Thus it is our conclusion that the above-quoted language of Civil Rule 60(b) is no more than a codification of equitable principles which have historically allowed courts to set aside, alter, or restrain the effects of prior judgments. We hold, therefore, that the one-year time limitation does not apply to proceedings to correct orders obtained by fraud upon the court.

Our holding that the one-year time limitation of Civil Rule 60(b) is inapplicable does not, however, dispense with Mallonee's allegation that Grow's motion was not timely. He has further argued that the five-year period between the order confirming sale and the motion to set that order aside was unreasonable and thus untimely under the rule's requirement that such motions "shall be made within a reasonable time". The rule, however, specifically does not limit the power of a court to relieve a party from an order or to set aside a judgment for fraud on the court.

▬ Although not restricted by the terms of the rule, we nevertheless agree that such motion should be made seasonably in light of all the circumstances and interests involved.[16] When, as in the instant case, we must determine whether or not a time period is reasonable we must consider the interests of the parties and of the courts. Certainly the parties have an interest in the finality of judgments, especially where, as here, the title to land is involved. But the interests of the parties are not the only factors to be balanced in our considerations. As Justice Black said in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250, 1256 (1944):

> [T]ampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

This sweeping assertion of courts' power to hear motions which seek the correction of decisions obtained by fraud on the court of entry has led one authority to conclude that

> the power of a defrauded court to grant relief is a sweeping, plenary power that is not subject to any rigid time limitation as is a motion under [Federal Rule of Civil Procedure] 60(b) . . . or to laches of a party . . . .[17]

The time limitations on actions or motions seeking the rectification of injustices arising from judgments or orders obtained through fraud on the issuing court should be as broad as that court's power to correct such wrongs. We do not feel that the instant case presents a fact situation requiring us to survey the precise bounds of those time limitations. Grow filed his motion to set aside the order confirming sale approximately within one year of discovering its existence. Mallonee has presented no evidence that he adversely relied upon that order, other than by paying taxes on the property. Where, as here, there has been no reliance upon the judgment or order by anyone other than by the party who perpetrated the fraud upon the court, and where, as here, that reliance is minimal

---

15. *Id.* at 245, 64 S.Ct. at 1001, 88 L.Ed. at 1255; 3 W. Barron & A. Holtzoff, Federal Practice and Procedure, Civil § 1330, at 423 (1958).

16. Hazel-Atlas Glass Co. v. Hartford-Empire Co., *supra.*; 7 J. Moore, Moore's Federal Practice ¶ 60.18 at 225, 226 (1971).

17. 7 J. Moore, Moore's Federal Practice ¶ 60.33, at 510 (1971); Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250; *See* Dausuel v. Dausuel, 90 U.S.App. D.C. 275, 195 F.2d 774 (1952).

and compensable by monetary payment, the time period between the issuance of the fraudulently obtained order and the discovery thereof will be given little weight in determining the reasonableness of the total elapsed time.[18] We conclude that Grow's motion was filed within a reasonable time.

■ Mallonee has argued that the proceedings which gave rise to the issuance of the order confirming sale evidence no behavior on his part that constitutes fraud on the superior court. He urges us to adopt the definition of "fraud on the court" stated in Lockwood v. Bowles, 46 F.R.D. 625 (D.D.C.1969) as follows:

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud *inter partes,* without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action.[19]

The *Lockwood* definition does not support Mallonee's conclusion that there was no fraud on the court in the instant case. Such fraud includes behavior which defiles the court itself and which results in the inability of the judicial machinery to perform in the usual manner its impartial task of adjudicating cases. The adjudicative integrity of a court may be defiled by the behavior of parties or attorneys which results in depriving adverse parties of substantive rights.[20]

*Lockwood* involved an attempt to set aside a 14-year-old judgment based on allegations of perjury committed by a witness. The court pointed out that there was no "involvement of an attorney, (an officer of the court)." [21] Accordingly, the most that was claimed was the fraud of an adverse party.

Mallonee was represented by counsel who participated in filing pleadings which grossly overstated the amount due, in levying on property not owned by the judgment debtor and in failing to serve notice of the motion to confirm sale. An attorney is an officer of the court.[22]

> While he should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently: on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court.[23]

■■ There has been no showing of an actual intent to defraud on the part of Mallonee or his attorney and we do not wish to cast such aspersions upon them. Nevertheless, fraud may be found in the absence of an intent to defraud; indeed, fraud may be found even where representations are made with a good faith belief in their truth.[24] Whether the deprivation of a party's rights by actions of the court are attributable to a willful intent to defraud or a reckless disregard of rules or statutory provisions, the court has the same duty to rectify the wrong. The mechanism for protecting and maintaining the decisional integrity of our judicial system is found in the statutes and rules which govern the procedures to be followed by parties, attorneys and judges. The purposeful or reckless disregard of those procedural safegards which results in the deprivation of substantive rights

---

18. *See* St. Mary v. St. Mary, 175 So.2d 893 (La.Ct.App.1965).

19. Lockwood at 631, *quoting* 7 J. Moore, Moore's Federal Practice ¶ 60.33, at 515 (1971).

20. *Cf.* 7 J. Moore, Moore's Federal Practice ¶ 60.33, at 512, 513 (1971).

21. Lockwood at 632.

22. Jackson v. State, 413 P.2d 488, 490 (Alaska 1966).

23. 7 J. Moore, Moore's Federal Practice ¶ 60.33 at 513 (1971).

24. Thompson v. Huston, 17 Wash.2d 457, 135 P.2d 834, 836 (1943).

constitutes an impermissible corruption of court process.[25]

The superior court's determination that Mallonee's actions constituted fraud on the court cannot be disturbed unless we are convinced that it has abused its discretion by ordering the vacation of its order confirming sale.[26]

■ The reckless, if not purposeful, disregard of procedural safeguards and the resulting denial of substantive rights which constitute corruption of the judicial system and fraud on the court are manifest in this case. Under the 1961 decision Mallonee obtained a judgment for an absolute amount of $218.59, plus interest. That amount was reduced by the net proceeds from the sale on execution of Grow's personalty to $193.34, plus interest.[27] Since 1964 Grow has not been and is not now liable to Mallonee for more than that amount. In 1966 Mallonee nonetheless procured the issuance of a writ of execution based upon not only the absolute amount of Grow's liability, but also for his contingent liability. He claimed a total amount due of $2,730.95. In procuring a writ of execution for such a contingent liability Mallonee overlooked the provisions of AS 09.35.010 which govern the enforcement of judgments by execution. The statute provides that

> [t]he party in whose favor a judgment is given *which requires the payment of money* . . . may have a writ of execution issued for its enforcement.

[Emphasis ours.]

Grow was merely required to indemnify Mallonee for any payment he might make to the plaintiff in satisfaction of the 1961 judgment. Inasmuch as the condition precedent to that liability never occurred, Grow was never required to make the "payment of money" to Mallonee. At the most Grow was liable to Mallonee for the unpaid balance of the costs and attorney's fees payable under that judgment.

In addition to overstating grossly the amount of money due him, Mallonee designated as the property upon which execution was to be levied real estate not owned by the supposed judgment debtor. The land was, and had for five years been recorded in the name of James Grow, William Grow's brother. Although our statutory provisions subject a wide variety of the property owned by a judgment debtor to execution sale,[28] it does not go so far as to permit the sale of property owned by his relations.

■ After the sale had taken place Mallonee moved for an order confirming sale as permitted by AS 09.35.180(a). That statute provides in part that "[w]here real property executed upon has been sold, the judgment creditor may, upon motion, apply for an order confirming the sale." Alaska Rule of Civil Procedure 5(a) requires that "every written motion . . . shall be served upon each of the parties . . . ." Inasmuch as the hearing upon the motion to confirm sale is intended by the statute to provide the judgment debtor with the opportunity to object to the sale[29] and the issuance of the order begins the one-year redemption period under AS

25. Long before the development of the tort concept of fraud as we know it today English jurisprudence recognized the necessity of assuring the integrity of its procedures. 2 F. Pollock & F. Maitland, The History of English Law 535 (2d ed. 1968).

26. Erick Rios Bridoux v. Eastern Air Lines, 93 U.S.App.D.C. 369, 214 F.2d 207, 207–210 (1954).

27. Similarly, at the execution sale Mallonee was the only bidder and obtained a D8 Caterpillar tractor and parts for

$50.00. Costs of sale were $24.75 and the judgment in Mallonee's favor was reduced by $25.25.

28. AS 09.35.070 makes "[a]ll goods, chattels, money, or other property, both real and personal, or an interest in the property of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action . . . liable to execution."

29. AS 09.35.180(b).

09.35.250, such a motion cannot be heard ex parte. Therefore, service upon the opposing party is necessary. Mallonee gave no notice whatsoever to Grow.[30]

In light of this evidence we cannot say that the superior court erred in finding that Mallonee had secured title to Grow's property by defrauding the court.

■ In his reply brief Mallonee suggests that Grow is not the real party in interest [31] in this matter inasmuch as he had conveyed the property to his brother prior to the entry of judgment and the order confirming sale. We do not reach this question as it was not raised in the court below [32] nor in the points on appeal.[33] We further note that Grow had reacquired a one-half interest in the property prior to seeking the vacation of the order confirming sale and thus qualified as a real party in interest for the purpose of that action.

The superior court's decision granting Grow's Motion to Set Aside Order Confirming Sale is affirmed.

30. Grow appeared by counsel at the trial of the original suit brought by *Anton.* Mallonee contends that the attorney-client relationship ended with entry of the final judgment and thus it was unnecessary for Mallonee to give notice of his motion for an order confirming sale. We reject this argument. Execution sales are always made after final judgment and the requirement of filing a motion for an order confirming sale would be meaningless if notice to opposing parties were not required.

31. Alaska R.Civ.P. 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest . . . . *See* Burns v. Anchorage Funeral Chapel, 495 P.2d 70 (Alaska 1972).

32. State v. 7.536 Acres, 431 P.2d 897, 900 (Alaska 1967).

33. Apex Concrete Co. v. Bray, 395 P.2d 514, 517 (Alaska 1964) ; Alaska Supreme Ct.R. 9(e).