Candace J. LIVINGSTON, Appellant,

v.

Donald R. LIVINGSTON, Appellee.

No. 2825.

Supreme Court of Alaska.

Dec. 2, 1977.

Robert H. Wagstaff, Wagstaff & Middleton, Anchorage, for appellant.

Wayne Anthony Ross, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ and CONNOR, JJ.

## OPINION

RABINOWITZ, Justice.

The controlling question presented by this appeal concerns the propriety of the superior court's vacating a previously entered default divorce decree. Factually, the case is unusual and therefore warrants detailed reference at this point.

In May 1973, appellant Candace Livingston filed a complaint for divorce in the Superior Court of the State of Alaska. The complaint asserted, in part, that one child, Carrie Ann Livingston, was born of the marriage. It was further alleged that Candace was a fit and proper person to have custody of the minor child, and that appellee Donald R. Livingston should be awarded reasonable rights of visitation. Counsel for Candace also filed with the superior court a motion to permit service by publication and an affidavit of diligent inquiry. Subsequently, Candace's counsel filed an application for entry of default which was accompanied by his affidavit in support of the application. Appellee Donald Livingston's default was thereafter entered by the clerk of the superior court. The matter then came on for default hearing before Superior Court Judge William H. Sanders.

In his findings of fact, Judge Sanders found that Candace "is a fit and proper person to have the care, custody and control of the minor child of the parties and that defendant should have reasonable rights of visitation with said child." The superior court's decree, which was entered on March 8, 1974, provided, in part, that Candace "is hereby granted sole custody and control of the minor child of the parties . . . with reasonable rights of visitation to the defendant."

Approximately three months after the entry of the decree, Superior Court Judge Harold J. Butcher, acting *sua sponte*, filed a "Motion to Open and Vacate Judgment." Concurrently with this motion Judge Butcher entered orders to show cause which required Candace and her counsel to appear at a stated time and show cause why the subject case "should not be opened and the judgment entered therein be considered a subject for vacating." In his motion to open and vacate, Judge Butcher asserted that counsel for Candace, as well as Candace individually, had committed fraud upon the court in the divorce proceeding which they had instituted in the superior court. Judge Butcher grounded his allegations of fraud on essentially two aspects of the case. First, he asserted that the affidavit of diligent inquiry which had been filed by Candace's counsel in support of the motion to permit service by publication was fraudulent. Second, Judge Butcher alleged that since the minor child of the parties was at all times residing in the State of Oregon with her father from shortly after filing of the complaint until entry of the divorce decree, the failure of Candace and her counsel to reveal the child's location constituted fraud upon the court. In Judge Butcher's view, this non-disclosure constituted fraud upon the court because the Superior Court of Alaska lacked jurisdiction to make any custody determination as to the parties' minor child if the child was not at the pertinent times a resident of the State of Alaska.[1]

Hearings were held on Judge Butcher's "Motion to Open and Vacate Judgment" before Superior Court Judge C. J. Occhipinti. At the conclusion of the hearings, Judge Occhipinti ruled that there had been a fraud perpetrated upon the court in that the superior court had been misled as to whether it had jurisdiction to award child custody and that counsel for appellant Candace Livingston had filed a false affidavit.[2] In his decision, Judge Occhipinti stated, in part:

> From outward appearances the Complaint recited simple basic facts found in most ordinary divorce actions.
>
> .    .    .    .    .
>
> Subsequently, . . . Judge Butcher, . . . received information that some irregularities may have existed in obtaining the divorce, which resulted in a motion made by Judge Butcher to open and vacate the Judgment . . . ..

In the Findings portion of his decision, Judge Occhipinti found, in part:

> 1. That the affidavit filed by Mr. Wagstaff on June 19, 1973, alleging dili-

1. In this regard, Judge Butcher's Motion to Open and Vacate Judgment reads:

   It is further alleged that thereafter attorney Wagstaff caused case 73–1637, *Livingston vs. Livingston* to be calendared for trial before Judge Sanders and on that date, without giving notice as to the time and place of trial to defendant or defendant's attorney, attorney Wagstaff together with his client, Candace J. Livingston, appeared and upon the call of the case the plaintiff took the oath and responding to questions put to her by attorney Wagstaff, testified in support of her complaint for divorce leading Judge Sanders into the belief that the child of the marriage, Carrie Ann Livingston, was within the jurisdiction of the Alaska court, by failing to disclose, as plaintiff's attorney had duty to do, that the child during all the times mentioned in this petition and before and afterwards was in the physical custody of the defendant in Portland, Oregon, and was not within the jurisdiction of this Alaska court and thereafter when Judge Sanders found sufficient proof to grant a divorce and fix custody of the child, attorney Wagstaff knowing as any lawyer ought to know, that the court had no jurisdiction over the child, prepared for the judge's signature findings and conclusions to the effect that the plaintiff was entitled to have the custody and control of the minor child and that the defendant should be required to pay the plaintiff the sum of $75.00 per month for the support of the minor child and prepared and presented a judgment in accordance therewith. Judge Sanders, alert to the rule of law that a personal judgment could not be maintained based on constructive service, struck from the judgment the order of support, but signed and entered the decree of divorce and placed custody of the child of the marriage in the plaintiff.

2. Judge Occhipinti also denied a motion for discovery which was filed by appellant and her counsel. They desired to inquire into the relationship and correspondence between Judge Butcher and appellee Donald Livingston.

gent inquiry did not comply with Alaska Civil Rule 4(e). Further, that the statement that both Mr. Wagstaff and his client had exhausted all avenues known to him and to his client was untrue.

. . . . .

4. That at the time of the hearing before Judge Sanders on March 8, 1974, the Plaintiff and Mr. Wagstaff did not advise the Court of the location of the minor child of the parties; that said minor child was at that time with her father in Oregon and had been there since prior to the filing, and that both Mr. Wagstaff and the Plaintiff knew this.

. . . . .

7. That Mr. Wagstaff proceeded to finalizing the matter in order to obtain the custody of the minor without fully advising the Court that another action had [been] commenced by the Defendant in Oregon. That this information was communicated to Mr. Wagstaff by Defendant's attorney on August 27, 1973.

In its conclusions of law, the superior court determined:

1. That the Decree obtained by the Plaintiff was obtained by virtue of fraud on the Court.

. . . . .

3. That Mr. Wagstaff was negligent in the preparation and use of the affidavit and did not candidly admit to the Court all the facts of the hearing on March 8, 1974.[3]

Appellant Candace Livingston now appeals, seeking reinstatement of the original divorce decree in which she was granted custody of the parties' minor child. In this appeal Candace argues that the superior court's order to show cause was improper and denied both appellant and her counsel due process of law; that proper service was effected upon appellee Donald Livingston; that the superior court had jurisdiction to award child custody in the case at bar; that fraud was not perpetrated upon the superior court; and that denial of certain discovery motions made by appellant and her counsel constituted an abuse of discretion on the part of the superior court.

■ *Mallonee v. Grow*, 502 P.2d 432, 439 (Alaska 1972), established that the appropriate standard of review for trial court resolutions of claims for relief grounded on fraud upon the court is abuse of discretion. Specifically, in *Mallonee* we said:

> The superior court's determination that Mallonee's actions constituted fraud on the court cannot be disturbed unless we are convinced that it has abused its discretion . . . .[4] (footnote omitted)

In *Allen v. Bussell*, 558 P.2d 496, 500 (Alaska 1976), we noted that the cases in which fraud upon the court has been found usually involve " 'the most egregious conduct involving a corruption of the judicial process itself.' "[5] Professors Wright and Miller observe:

> [T]he courts have refused to invoke this concept in cases in which the wrong, if wrong there was, was only between the parties in the case and involved no direct assault on the integrity of the judicial process. *Nondisclosure by a party or his attorney has not been enough.*[6] (footnotes omitted; emphasis added)

---

**3.** Judge Occhipinti's Decision was entered on February 20, 1976.

**4.** *Mallonee v. Grow*, 502 P.2d 432, 439 (Alaska 1972) (footnote omitted); *see also Allen v. Bussell*, 558 P.2d 496, 499–500 (Alaska 1976); 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2872, at 261 (1973).

**5.** Quoting 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2870, at 255 (1973).

As Professors Wright and Miller observe:
Perhaps the principal contribution of all of these attempts to define 'fraud upon the court' and to distinguish it from mere 'fraud' is as a reminder that there is a distinction. . . . The draftsmen [of Rule 60(b), Federal Rules of Civil Procedure] must have conceived of 'fraud upon the court,' as they used that phrase, as referring to very unusual cases involving 'far more than an injury to a single litigant.' (footnotes omitted)
11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2870, at 253 (1973).

**6.** *Id.* at 253–54.

*See Wilkin v. Sunbeam Corp.*, 466 F.2d 714 (10th Cir. 1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258 (1973); *Kupferman v.*

■ Based on our review of the record in this case, we have concluded that the superior court abused its discretion in determining that appellant Candace Livingston and her counsel committed a fraud upon the court. In our view, the alleged fraudulent conduct does not approximate the level of egregious conduct necessary to support a holding that fraud had been perpetrated on the superior court.

First, with respect to the mode of service of process on appellee Donald Livingston and the affidavit of diligent inquiry of appellant's counsel which was filed in connection therewith, we are of the view that any deficiencies in the subject affidavit do not amount to a corruption of the judicial process; nor can such asserted deficiency be characterized as egregious.[7] Given the fact that appellee Donald Livingston had actual notice of the pendency of divorce proceedings in the Superior Court of the State of Alaska, we fail to discern how he was prejudiced by any deficiency in counsel's affidavit of diligent inquiry. Absent any real prejudice to the party allegedly affected, we conclude that at best a slight case has been presented for holding that either appellant or her counsel engaged in egregious conduct which involved corruption of the judicial process itself.

The record shows that after the superior court had entered an order permitting service by publication, counsel for appellant received a letter from Jeffrey Noles, a Portland, Oregon, attorney, advising that he represented Donald Livingston regarding his marital difficulties; that Livingston did not know whether counsel for Candace had in fact filed the complaint in the courts of Alaska and wished to be advised; that counsel for Candace should "not expect [Donald] . . . to make an appearance and waiver as far as jurisdiction of . . Alaska's courts;" and that the custody of the child "will ultimately be decided here in Multnomah County." Counsel for appellant testified that in subsequent telephone conversations he had with Mr. Noles during the summer of 1973, Noles informed him that Donald Livingston would not submit himself to the jurisdiction of Alaska's courts and that he, Noles, would neither reveal the whereabouts of Donald Livingston nor accept service of process for Livingston. Appellee's attack on what we choose to characterize as minor failures in the nature of technical non-compliance of the affidavit of diligent inquiry with the provisions of Civil Rule 4(e)(1) does not change the facts that Donald Livingston received actual notice of

*Consolidated Research & Mfg. Corp.,* 459 F.2d 1072 (2d Cir. 1972). *See also Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 441 F.2d 631 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971); *United States v. One 1940 Oldsmobile Sedan Auto.,* 167 F.2d 404 (7th Cir. 1948).

7. Civil Rule 4(e)(1) provides:
*Diligent Inquiry.* Inquiry as to the absent party's whereabouts shall be made by the party who seeks to have service made, or by his attorney actually entrusted with the conduct of the action, or by the agent of the attorney. It shall be made of any person who the inquirer has reason to believe possesses knowledge or information as to the absent party's residence or address or the matter inquired of. The inquiry shall be undertaken in person or by letter, and the inquirer shall state that an action has been or is about to be commenced against the party inquired for, that the object of the inquiry is to give such party notice of the action in order that such party may appear and defend it. When the inquiry is made by letter, postage shall be enclosed sufficient for the return

of an answer. The affidavit of inquiry shall be made by the inquirer. It shall fully specify the inquiry made and of what persons and in what manner so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice.

Appellee claims primarily that Candace and her counsel did not inquire diligently as to his whereabouts in the State of Oregon, and thus the affidavit of diligent inquiry filed by counsel was false. The text of counsel's affidavit of diligent inquiry reads in full:
Comes now Robert H. Wagstaff, attorney for plaintiff herein, and states that he has exhausted all avenues known to both him and his client Candace J. Livingston as to the present whereabouts of the defendant Donald R. Livingston. All recent correspondence to him at his last known address in Oregon has remained unanswered. Accordingly plaintiff requests of this court permission to serve absent defendant by publication according to the rule.

the pending divorce action; that he received such notice in ample time to appear and defend against any aspect of the relief demanded; that he deliberately refused to appear, defend, or submit himself to the jurisdiction of the courts of Alaska; and that Donald Livingston's counsel was made aware that Candace intended to proceed by default.[8] Against this factual background we have concluded that any deficiencies relating to service by publication in the case at bar do not constitute a fraud upon the superior court.

■ We turn next to another facet of the superior court's conclusion that a fraud had been committed on the court—whether the superior court had jurisdiction to determine custody of the minor child when the child was not physically present in Alaska at the time the default decree was entered. Candace maintains that she had taken the minor child Carrie to visit the child's grandmother in Oregon while she, Candace, looked for a job in Alaska and filed for divorce. Candace further stated that it was her intent to return for the child after finding employment in Alaska. According to Candace, after she had called and told Donald that she had filed for divorce, Donald absconded with the child. Donald testified that he "took [his] daughter where [he] figured she'd be better off," after learning that Candace had filed for divorce.[9]

The superior court's findings address this jurisdictional issue only tangentially in the context of determining whether a fraud had been committed upon the court by appellant and her counsel.[10] We conclude that consideration of the domicile-jurisdiction issue would be inappropriate since the superior court's findings concerning the child's domicile are inadequate. Furthermore, our disposition of other issues regarding the superior court's decision to vacate the default divorce decree, as it relates to child custody, makes it unnecessary to determine appellant's domicile-jurisdiction argument.

Nevertheless, we must consider the related question whether a fraud had been perpetrated upon the superior court by the failure of either appellant or her counsel to disclose the physical location of the parties' minor child. Here again, under the standards adopted in *Allen v. Bussell*, 558 P.2d 496 (Alaska 1976), and *Mallonee v. Grow*,

---

8. Professors Wright and Miller note:
   Further evidence of the shift away from formalism in the notice-giving process is the fact that the federal courts generally take a permissive attitude toward the mechanism employed for service of process when defendant actually receives notice. (footnote omitted)
   4 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1074, at 295 (1969). *See, e, g., McConnell v. Anderson*, 451 F.2d 193 (8th Cir. 1971), *cert. denied*, 405 U.S. 1046, 92 S.Ct. 1312, 31 L.Ed.2d 588 (1972); *Nowell v. Nowell*, 384 F.2d 951 (5th Cir. 1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968).

9. Appellant asserts that she was at all times during the pendency of the divorce action and for at least one year prior thereto domiciled in the State of Alaska; that her daughter Carrie lived with her and Donald Livingston in Alaska since 1970; and that the facts together with the facts outlined in the main body of the opinion establish the minor child's domicile in Alaska and thus gave jurisdiction to the superior court to enter a custody determination.
   Appellee asserts that Candace had agreed in early 1973 to move to Oregon; that all their household and personal goods were shipped to Oregon; that rather than his abandoning Candace and Carrie, Candace abandoned her husband and her daughter by returning to Alaska; that from the approximate time of the filing of the complaint and at all times since then, he has had custody of their minor daughter, and that therefore the superior court did not have jurisdiction to award custody.
   It is not disputed that Superior Court Judge Sanders was unaware of the fact that the child was in Oregon during the action's pendency and of the circumstances of her being there.

10. The fact that there is a question of the court's jurisdiction implies that the proper inquiry should be by a Civil Rule 60(b)(4) motion for relief from judgment on the ground that the judgment is void. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2862 (1973).
    Civil Rule 60(b)(4) reads:
    On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

    .  .  .  .  .  .

    (4) the judgment is void .  .  ..

502 P.2d 432 (Alaska 1972), we have concluded that the superior court abused its discretion in holding that a fraud upon the court had been perpetrated by failure to disclose the location of the child.

The child's physical location admittedly was material to the issue of the court's jurisdiction to enter a custody provision in the decree of divorce. It was also a relevant factor in regard to the superior court's duty to make a custody disposition which is in the best interests of the child. If the factual situation had been clearer on the issue of the child's domicile—such that the superior court's lack of jurisdiction to enter a custody decree was clear in light of such domicile—a stronger case for holding a fraud upon the court through non-disclosure would have been made out. However, as Professor Moore states:

> Fraud in obtaining jurisdiction may at times be a fraud upon the court. But appropriate relief can usually be afforded under other concepts of fraud; and better judicial administration will result in most cases if this species of fraud is not put within the rather nebulous category of fraud upon the court. While fraud as to jurisdiction may improperly put the judicial machinery in operation, it usually does not corrupt the judicial power.[11]

In light of the foregoing, we believe that the superior court incorrectly decided that a fraud had been committed upon the court by the failure of either appellant or her counsel to disclose information with respect to the minor child's whereabouts.

Despite our conclusion that the record fails to furnish support for the superior court's determination that a fraud upon the court had been perpetrated, we are of the view that the superior court's decision to vacate the default divorce decree, as it relates to the custody of the minor child, should be sustained.

▮ Civil Rule 60(b) reads, where pertinent:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> .   .   .   .   .
>
> (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b), in its entirety, attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts.[12] Decisions under the parallel federal rule of civil procedure reflect the view that Rule 60 is to be "liberally construed, particularly with regard to default judgments, in order that judgments will reflect the true merits of a case."[13] The rationale for this liberal construction is that there exists greater reason for reopening a judgment when the merits of the cause have never been considered than when the judgment has been rendered after a full trial on the merits.[14] It has been held that clause (6) of Rule 60(b) gives the courts ample power to vacate judgments whenever that action is appropriate to accomplish justice.[15] In the words of Professors Wright and Miller:

> In general, relief is given under clause (6) in cases in which the judgment was obtained by the improper conduct of the

**11.** 7 Moore's Federal Practice ¶ 60.33, at 514–15 (2d ed. 1975).

**12.** *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970).

**13.** 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2852, at 143 (1973) (footnote omitted). *See also In re Casco Chemical Co.,* 335 F.2d 645, 651 n.18 (5th Cir. 1964); *United States v. One 1966 Chevrolet Pickup Truck,* 56 F.R.D. 459, 462 (E.D.Tex.1972).

**14.** In *Edwards v. Velvac, Inc.,* 19 F.R.D. 504, 507 (E.D.Wis.1956), the court stated:

> Rule 60(b) and its counterparts in state statutes, have proven themselves to be valuable, equitable and humane discretionary powers by which courts have been able to relieve the oppressed from the burden of judgments unfairly, fraudulently or mistakenly entered.

**15.** *Klapprott v. United States,* 335 U.S. 601, 614–15, 69 S.Ct. 384, 390, 93 L.Ed. 266, 277 (1949).

party in whose favor it was rendered . . . .[16]

In view of the foregoing principles, we are of the opinion that application of Civil Rule 60(b) to the facts of the instant case required that the default decree, as it pertains to custody of the minor child, should have been set aside. In *Horutz v. Horutz*, 560 P.2d 397, 399 (Alaska 1977), this court said:

In sifting and weighing the often emotionally charged and diametrically opposed testimony of the parties, our decisions, and Alaska's positive law, require that the trial court's resolution of custody issues be determined by the paramount criterion of the best interests of the child.

In the case at bar there has never been a determination on the merits as to the custody disposition which would be in the best interests of the minor child. Given the commitment of Alaskan courts to this paramount criterion of the best interests of the child, we think that the non-disclosure, by both appellant and her counsel, of the child's physical location at the time the default hearing took place, constituted sufficient grounds under Civil Rule 60(b) for vacation of the decree's custody provisions. The facts surrounding the child's physical location were unquestionably material to the superior court's obligation to fashion a custody decree in accordance with the best interests of the child. Because of the non-disclosure, the duty of the superior court to determine the difficult question of an appropriate custody disposition was frustrated.

In short, although we have held that the superior court erroneously determined that a fraud had been perpetrated upon the court, we have concluded that the non-disclosure of the child's physical presence at the time of the default hearing justified the superior court's affirmative invocation of Civil Rule 60(b)(6).[17] We hold that in a default proceeding seeking adjudication of custody questions, it is the duty of both the moving party and his or her attorney to advise the court of the physical location of the subject of the custody inquiry, as well as the circumstances of the child's physical location.[18] Absent such information, the superior court lacks the requisite data upon which to make a rational custody determination in the child's best interests.

Our decision as to the duty of the moving party and his or her attorney to disclose to the trial court information regarding the child's physical location is derived from this court's constitutional duty to insure that justice is done in the individual case, this court's constitutional authority to adopt rules. governing practice and procedure in civil cases,[19] and this court's decisional authority—parallelling statutory law—which requires that custody be determined by the child's best interests.[20]

---

**16.** 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2864, at 213 (1973).

**17.** Inherent in our disposition is the conclusion that Judge Butcher's questionable procedural use of an order to show cause satisfied the motion requirement of Civil Rule 60(b) in the context of the hearing which was held before Judge Occhipinti.

**18.** Compare Justice Traynor's views at the conclusion of his opinion in *Sampsell v. Superior Court*, 32 Cal.2d 763, 197 P.2d 739, 751 (1948), where he wrote:

The fact that the child is now living in Utah, where it was taken by defendant some time after the commencement of the present action, likewise does not deprive the respondent court of jurisdiction over the child's custody. The respondent court acquired jurisdiction over the subject matter of the custody of the child while the child was clearly domiciled within this state. Any subsequent change in the child's abode is relevant only to the determination of how the court's jurisdiction should be exercised with due regard for the welfare and best interest of the child. That question cannot be decided on the basis of the meagre facts now before this court, even if it were proper in a mandamus proceeding to determine how the trial court should exercise its jurisdiction.

**19.** Alaska Const. art. IV, § 15.

**20.** Our disposition of this case has made it unnecessary to pass upon any of the other questions raised in this appeal.

We specifically note that we have not addressed the question of whether any conduct on the part of appellant's counsel was ethically improper or in violation of the Code of Professional Responsibility. We have been advised

Insofar as it vacates the custody provisions of the default decree previously entered in the case at bar, the judgment of the superior court is Affirmed.[21]

BURKE, J., not participating.

BOOCHEVER, Chief Justice, concurring.

I would not rule on the issue of whether the failure of appellant or her counsel to disclose information with respect to the minor child's whereabouts constituted fraud on the court. I believe that under certain circumstances, a failure to inform the court of facts known to the party or counsel may constitute fraud on the court. Because of our disposition of the issue under Civil Rule 60(b), it is unnecessary to pass on whether the facts of this case are such as would constitute fraud on the court. As stated by Professor Moore and quoted in the majority opinion, in this type of situation:

> . . . better judicial administration will result in most cases if this species of [alleged] fraud is not put within the rather nebulous category of fraud upon the court.

by appellant's counsel that this is the subject of a disciplinary proceeding filed with the Alaska Bar Association. This disciplinary proceeding is based on the same allegations which we have alluded to earlier in the opinion.

21. Following oral argument, Justice Burke recused himself and did not participate in deliberations on this matter.