### MUNICIPALITY OF ANCHORAGE, Appellant,

v.

### Thillman F. WALLACE and Ella H. Wallace, Appellees.

### No. 4062.

Supreme Court of Alaska.

June 22, 1979.

Richard A. Weinig, Asst. Municipal Atty., Theodore D. Berns, Municipal Atty., Anchorage, for appellant.

A. Lee Petersen, Anchorage, for appellees.

Before RABINOWITZ, Chief Justice, CONNOR and MATTHEWS, Justices, DIMOND, Senior Justice, and BUCKALEW, Superior Court Judge.

## OPINION

DIMOND, Senior Justice.

By reason of non-payment of 1973 property taxes, the Greater Anchorage Area Borough [1] acquired some of the Wallaces' property in a tax foreclosure action in the superior court on April 10, 1974. Prior to that date, the Wallaces had been notified of the pendency of the foreclosure action, but had failed to pay the taxes due.

The property was acquired by the borough subject to the Wallaces' right to redeem the property within one year, i. e., by April 10, 1975.[2] The Wallaces were notified of this right approximately 30 days prior to the expiration of the one-year period of redemption.[3] Notification was made by

---

1. The Greater Anchorage Area Borough was succeeded by the Municipality of Anchorage, incorporated on September 15, 1975. Therefore, the municipality is the named defendant in this case.

2. At the time of the foreclosure proceeding in this case, AS 29.53.310 provided, in relevant part:

    *Redemption period.* (a) Properties transferred to the borough are held by the borough for at least one year. During the redemption period a party having an interest in the property may redeem it by paying the lien amount plus penalties, interest and costs. Property redeemed is subject to all taxes, assessments, liens and claims as though it had continued in private ownership. Only the amount applicable under the judgment

and decree must be paid in order to redeem the property. [Ch. 118, § 2, SLA 1972] This statute has since been amended. [Ch. 48, § 1, SLA 1977]

3. At the time of the foreclosure proceeding, AS 29.53.350 provided:

    *Expiration.* Not earlier than 30 days before the expiration of the redemption period the clerk shall publish a redemption period expiration notice. The notice shall contain the date of judgment, the date of expiration of the period of redemption and a warning to the effect that all properties ordered sold under the judgment, unless redeemed, shall be deeded to the borough or city immediately on expiration of the period of redemption and that every right or interest of any person in the properties will be forfeited forever to the

certified mail and by newspaper publication.

The taxes, with costs, penalties and interest, amounted to about $180. The Wallaces failed to make payment. As a result, on April 22, 1975, the court issued a foreclosure deed conveying all right, title and interest in the Wallaces' property to the borough.

After the period of redemption had expired, the borough had two choices: (1) it could sell the property, either at public auction or by way of a contract of sale, or (2) it could hold the property for, or devote it to, a public purpose.[4] At any time before the sale of the property, the record owners, the Wallaces, had the right to repurchase the property.[5] However, if it was decided by the borough to devote the property to a public purpose, then the Wallaces had no repurchase rights as to the property.[6]

It is the latter situation that exists in this case. Pursuant to the Greater Anchorage Area Borough Code of Ordinances, section 14.25, entitled "Dedication of Tax-Foreclosed Property," effective during the proceedings in this case,[7] a series of meetings occurred after the redemption period to determine disposition of the foreclosed properties, i. e., whether they would be sold at auction or by contract of sale, or dedicated to a public purpose. The Borough Land Trust Fund Council met on May 23 and July 17, 1975, and recommended that tracts A and D of the Wallaces' property be retained for a public purpose, such as a neighborhood park site. On June 11, 1975, the Borough Planning and Zoning Commission assessed the public value of the foreclosed properties and also recommended that tracts A and D be kept for a public purpose. The borough assembly adopted the recommendations of the two reviewing bodies on July 28, 1975. Tracts A and D—the Wallaces' properties— were dedicated to "open space" as a result of the borough assembly's resolution no. RE 75–81.

It was not until late November, 1976, after the Wallaces had paid the remaining mortgage owed to Metropolitan Mortgage and Securities Company of Alaska, Inc.,[8]

---

borough or city. The notice is published once a week for four consecutive weeks in a newspaper of general circulation distributed within the borough. If there is no newspaper of general circulation distributed within the borough, the notice is posted in three public places for at least four consecutive weeks. The clerk shall send a copy of the published notice by certified mail to each record owner of property against whom a judgment of foreclosure has been taken. The notice shall be mailed within five days of the first publication. The mailing shall be sufficient if mailed to the property owner at the last address of record. The right of redemption shall expire 30 days after the date of the first publication notice. [Ch. 118, § 2, SLA 1972] This statute has since been amended. [Ch. 48, §§ 2, 3, SLA 1977]

4. AS 29.53.370 provided:
   *Sale of Foreclosed Properties.* Tax-foreclosed properties conveyed to a borough or a city by tax foreclosure may be sold. Before the sale of any property held for a public purpose, the assembly or council by ordinance shall determine that the public need no longer exists. [Ch. 118, § 2, SLA 1972] [prior to 1977 amendment]
   AS 29.53.375 provided:
   *Repurchase by record owner.* (a) The record owner at the time of tax foreclosure of property acquired by a borough or city, or his

assigns, may, at any time before the sale or contract of sale of the tax-foreclosed property by the borough or city, repurchase the property. The borough or city shall sell the property, for the full amount applicable to the property under the judgment and decree, with interest at the rate of eight per cent a year from the date of entry of the judgment of foreclosure to the date of repurchase, together with delinquent taxes assessed and levied as though it had continued in private ownership.
   (b) After termination of the right of redemption there is no right to repurchase property held for, or devoted to, a public purpose. [Ch. 118, § 2, SLA 1972] [prior to 1977 amendment]

5. AS 29.53.375(a), *supra* n.4.

6. AS 29.53.375(b), *supra* n.4.

7. Section 14.25, entitled Disposal of Public Lands, was incorporated in § 25.10.040 of the Anchorage Municipal Code when the Greater Anchorage Area Borough was succeeded by the Municipality of Anchorage.

8. A deed of trust was executed on June 6, 1969, by the Wallaces as security for a loan from Metropolitan Mortgage and Securities Company of Alaska, Inc. The deed of trust listed

that they became aware that tracts A and D of their properties had been foreclosed for taxes, and subsequently devoted to public use. The Wallaces filed a civil complaint in the superior court seeking to repurchase their tax-foreclosed properties (tracts A and D) from the Municipality of Anchorage. After a hearing on cross-motions for summary judgment, Judge Kalamarides ruled that notice by publication [9] provided inadequate due process safeguards to protect the Wallaces' substantial property interest in their tax-foreclosed property prior to its dedication to a public purpose. The Wallaces were allowed to repurchase their property within 30 days of the judgment for the amount of taxes, interest, penalty and foreclosure costs owing. The municipality was ordered, in return, to convey all right, title and interest in such property to the Wallaces. Summary judgment in favor of the Wallaces was entered accordingly, and the municipality has appealed.

AS 29.53.375, as it existed prior to 1977,[10] was entitled "Repurchase by record owner." Subdivision (a) of that section permits the record owner of tax-foreclosed property to repurchase the property "at any time before the sale or contract of sale of the tax-foreclosed property by the borough or city." The amount that the record owner would have to pay the borough or city to repurchase the property was the "full amount applicable to the property under the judgment and decree, with interest at the rate of eight per cent a year from the date of entry of the judgment of foreclo-

sure to the date of repurchase, together with delinquent taxes assessed and levied as though it had continued in private ownership." Subdivision (b) under the same heading, "Repurchase by record owner," provided: "After termination of the right of redemption there is no right to repurchase property held for, or devoted to, a public purpose."

At first glance, it might appear that as to tax-foreclosed property under (b), there would be no right for the record owner to repurchase the property. But that would be the case only after the property was held for, or devoted to, a public purpose. In this case there was a time lag between the date that the property was deeded to the borough, which was April 24, 1975, and the date that the assembly enacted a resolution holding or devoting the property to a public purpose, on or about July 28, 1975. Since (b) is a subdivision under the general heading, "Repurchase by record owner," it is logical to presume that at least as to the time between April 24 and July 28, 1975, the Wallaces had the right to repurchase their property to the same extent that they would have had if the property was to be sold at public auction or by contract of sale.

In fact, under subdivision (a) of AS 29.-53.375, the interest which the record owner retains in the property even after the period of redemption has passed is apparent from the fact that if the owner seeks to repurchase his property, he must pay, in addition to other amounts mentioned, the

several properties owned by the Wallaces, including tracts A and D.

9. The type of "notice" that was given by publication as to the act of the borough in devoting the property to a public purpose is discussed later in this opinion.

10. Note 4, *supra*. AS 29.53.375 was amended in 1977 to read as follows:

*Repurchase by record owner.* (a) The record owner at the time of tax foreclosure of property acquired by a borough or city, or his assigns, may, at any time before the sale or contract of sale of the tax-foreclosed property by the borough or city, repurchase the property. The borough or city shall sell the property for the full amount applicable to the property under the judgment and decree,

with interest at the rate of eight per cent a year from the date of entry of the judgment of foreclosure to the date of repurchase, delinquent taxes assessed and levied as though it had continued in private ownership, and costs of foreclosure and sale, including, but not limited to, costs of publication of notice and any costs associated with the determination of holders of mortgages and other liens of record under § 350(a) of this chapter.

(b) After adoption of an ordinance providing for the retention of a parcel of tax-foreclosed property by the municipality for a public purpose, the right of the former record owner to repurchase the property ceases. [am. Ch. 48, §§ 5, 6, SLA 1977]

"delinquent taxes assessed and levied as though it [the property] had continued in private ownership." AS 29.53.375(a), *supra* n.4. There certainly would be no point in the city continuing to assess and levy taxes on tax-foreclosed property even after the period of redemption had expired, if the owner was not considered to still retain a recognizable interest in the property.

This fact was admitted by the municipality in the superior court. In its memorandum in support of its motion for summary judgment, the municipality stated: "Plaintiffs did have the right to repurchase the property from the Greater Anchorage Area Borough until a tax sale was held or until its dedication to a public use." Then later in its memorandum, the municipality stated: "[T]he taxpayer also has the right to . . . repurchase the property until it is sold, or dedicated to a public use under AS 29.53.375." Furthermore, at the hearing on the motions for summary judgment in superior court, the following colloquy between the municipality's counsel and Judge Kalamarides supports the above-quoted admissions by the municipality: [11]

THE COURT: If the property is being held for general purpose, the man whose land is in that area, can he come in and say "Hey, I want this land back, here's the interest, here's the penalty, here's the taxes"?

MR. WERTZBAUER: Yes, before the action is final.

THE COURT: How—when is that action final?

MR. WERTZBAUER: Well, the action is final when the resolution holding it for public purpose is passed . . . . . .

We turn now to the question of whether the borough was obliged to give notice to the Wallaces of the fact that their property was being considered for devotion to a public purpose. As long as any vestige of ownership resided in the Wallaces, they cannot be divested of it by operation, or process of law, other than that which is "due" them—*i. e.*, by a law which is eminently fair and just according to civilized and decent standards which fairly balance the relationship between the government and those who are governed.

We believe that notice was the Wallaces' due in this case. It is true that they were notified of the tax foreclosure proceedings, and of the fact that they had a period of time to redeem their property. Mr. Wallace stated in an affidavit that he did not recall having received those notices. He did state, however, that he had received notices from the borough concerning taxes and interest that were due on other property he and his wife owned, and that this other property would be sold at a tax foreclosure sale. He stated that, with respect to those pieces of property, he had paid what was necessary to remove them from the foreclosure list.

Although the record does show that someone on his behalf had signed the return receipt card for certified mail containing the notices as to tracts A and D, the property involved in this case, there is no showing that the Wallaces intentionally relinquished their rights to the property. Neglect or forgetfulness or carelessness on their part may have existed. But the existence of an intent to abandon their rights to this property does not appear, nor is it even suggested.

The applicable law itself recognized that there may be neglect or forgetfulness on the part of taxpayers by providing in AS 29.53.375(a) that the record owner at any time before the borough sold the property, either at a public auction or by way of a contract of sale, could come in and regain the property by payment of accrued taxes, interest, costs, et cetera. As to subdivision (b) of that section, counsel for the municipality admitted at the summary judgment hearing that the same effect could be accomplished if payment of those items by the owner was made prior to final action dedicating the property to a public purpose. Thus, at that late date, despite the notices

---

11. We refer to this admission on the part of the municipality because, in its brief on appeal, the municipality takes precisely the opposite position that the borough, which had preceded the municipality, adopted in the superior court on the motion for summary judgment.

of foreclosure and those relating to the period of redemption, the law still recognized the rights of delinquent taxpayers to regain ownership of their property.

We believe that notice of the plan to devote the Wallaces' property to a public purpose should have been given to the Wallaces before it was accomplished and the last vestige of their ownership of the property extinguished. This would have amounted to a slight burden on the borough. The Wallaces' address was known. A simple notice could have been mailed to them stating that tracts A and D were being considered for devotion to a public purpose, and that they had the right to repurchase their property from the borough before the event of public dedication became final by the borough assembly adopting a resolution. Counsel for the municipality acknowledged at the superior court hearing on the cross-motions for summary judgment that a "general" notice was given of this planned disposition of tax-foreclosed property. The transcript reveals the following:

> THE COURT: Yes, well, I—but what I'm getting at is that if it goes for a tax sale, the person whose property is in that area of land that's going to be sold, he has the right to come in and redeem or repurchase, whatever you call it, redemption, because he's not bidding in on it. All he's doing is paying up the interest, the penalty and the taxes, and he gets title back to his land. Whereas, the other fellow, who is so unfortunate as to have a piece of property that the Municipality desires, he gets no notice. He's just cut off, he can't redeem. He's done.

> MR. WERTZBAUER: The party who is being subject to a tax sale gets no notice either, the Statutes don't provide for notice to them, either. They're in the same situation.

> THE COURT: There must be a tax sale notice, isn't there?

> MR. WERTZBAUER: Well, there's a general notice to everyone, as there is a general notice to everyone that the property's being held for public purpose.

> THE COURT: That's got to—Well, now, we've got a general notice both for tax sales and for property being held for general purpose?

> MR. WERTZBAUER: That's correct.

However, from a review of the record, such general notices really amounted to no notice at all. One published notice stated that the Anchorage Borough Land Trust Fund Council would hold its monthly meeting on July 17, 1975, and that the public was invited to attend. No mention was made that at that meeting the Trust Fund Council was to consider devoting tax-foreclosed property to a public purpose. The other "general" notice was that the assembly would meet at a certain date and time to consider a resolution relating to retaining tax-foreclosed properties for a public use. In neither notice was the property described or the names of the owners of the property given. In effect, the so-called "general notices" were idle gestures so far as the particular property owners were concerned, and in reality constituted no notice at all that their property was being considered for devotion to a public purpose. We believe that specific, informative notices of the process the borough was engaging in with respect to the Wallaces' property was their due, and since that was not accomplished, the "general" notices we have referred to were mere gestures and did not accord with due process of law as required by the constitution.[12] *See Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873–74 (1950).[13]

12. The United States Constitution, amendment 14, section 1, provides: "No state shall . . deprive any person of life, liberty, or property, without due process of law . . . ." The Alaska Constitution, article I, section 7, provides: "No person shall be deprived of life, liberty, or property, without due process of law."

13. The legislature in 1977 amended AS 29.53.-370 to provide for notice to be given to the former record owner of property when the municipal assembly was in the process of determining whether tax-foreclosed properties should be retained for a public purpose or should be sold. AS 29.53.370 now provides:

What we are requiring is a fair adjustment or balance between the rights of the municipal government to collect its taxes on the one hand, and on the other, the right of a property owner not to be deprived of property except in a fair and just manner. The municipality should be interested merely in collecting its fair share of taxes. But here it is attempting to claim far more. The Wallaces' property, which is the subject of this action, is estimated to be worth approximately $250,000. In exchange for property of such worth, the municipality is willing to write off taxes that amount at the most to a few hundred dollars. The basic injustice of such a situation is obvious.

An analogy might be made between the power of a municipality to do what was done here, and the exercise of its power of eminent domain. In both instances, the city acquires possession and ownership of a citizen's real property. But here the analogy ends. In condemnation proceedings, the property owner must be paid just compensation. But in tax foreclosure proceedings, where property is dedicated for a public purpose, no compensation is allowed—despite the fact that the value of the property taken may be many times greater than the delinquent taxes owed.

We are not saying that in this situation the municipality must pay the property owner the difference between the value of the property and the unpaid taxes. What we are saying is that, since the legislature has recognized a degree or vestige of ownership in the record owner in the property before final action is taken to devote or dedicate the property to a public purpose, basic fairness requires the municipality to perform one last, simple act before the public purpose action becomes final. That act is to notify the record owner of the action being taken in order that the owner may come in and recover the property by payment of the only sum the municipality should be interested in collecting, that is, delinquent taxes, penalties, interests and costs of the foreclosure action.

The judgment of the superior court is affirmed.

BOOCHEVER and BURKE, JJ., not participating.

*Disposition and sale of foreclosed properties.* (a) The assembly of a borough or council of a city shall determine by ordinance whether foreclosed property deeded to the municipality under § 360 of this chapter shall be retained by the municipality for a public purpose. The ordinance shall contain the legal description of the property, the address or a general description of the property sufficient to provide the public with notice of its location, and the name of the last record owner of the property as his name appears on the assessment rolls of the municipality.

(b) Tax-foreclosed properties conveyed to a borough or city by tax foreclosure and not required for a public purpose may be sold. Before the sale of tax-foreclosed property held for a public purpose, the assembly or council, by ordinance, shall determine that a public need does not exist. The ordinance shall contain the information required in (a) of this section.

(c) The clerk shall send a copy of the published notice of hearing of an ordinance to consider a determination required by (a) or (b) of this section by certified mail to the former record owner of the parcel of property which is the subject of the ordinance. The notice shall be mailed within five days of its first publication and shall be sufficient if mailed to the property owner at the last address of record.

(d) The provisions of (c) of this section do not apply with respect to property which has been held by the municipality for a period of more than 10 years after the close of the redemption period. [am. Ch. 48, § 4, SLA 1977]