The LAW OFFICES OF MURPHY L. CLARK, Appellant,

v.

David ALTMAN, Appellee.

No. 6501.

Supreme Court of Alaska.

March 30, 1984.

---

Donna C. Willard, Willoughby & Willard and Michael W. Flanigan, Clark, Walther & Flanigan, Anchorage, for appellant.

Charles G. Evans, Smith & Gruening, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and SERDAHELY *, Superior Court Judge.

## OPINION

MATTHEWS, Justice.

Murphy Clark obtained a default judgment against a former client, David Altman, for legal services. The judgment totalled $5,799.70 and was entered on November 29, 1979. Altman's subsequent motion to have the judgment set aside, accompanied by a bond of $5,849.23 for payment of any judgment which might eventually be rendered, was initially granted by Judge Karl Johnstone, to whom the case was assigned. Clark, however, successfully moved for reconsideration and the original default judgment was reinstated as of March 2, 1980. The amount of the bond was paid to Clark on April 14, 1980. The balance on the judgment was then $202.22, reflecting additions of $117.00 in costs of execution and $134.75 in accrued interest.

Eight days later, on April 22nd, Clark caused real property owned by Altman to be sold at an execution sale. At the sale Clark purchased the property by bidding $2,070.49 as an offset on the judgment. No money was paid to the officer conducting the sale. The actual amount of the judgment at that point, including the costs of the execution sale, was $388.13.[1]

In May of 1980, Altman attempted to have the default judgment set aside. Clark successfully resisted this effort.

On August 22, 1980, Clark moved to confirm the execution sale pursuant to AS 09.35.180.[2] The motion was not opposed and was granted on September 21, 1980.

---

* Serdahely, Superior Court Judge, sitting by assignment made pursuant to Article IV, Section 16, of the Constitution of Alaska.

1. Pending was a motion for additional attorney's fees by Clark initially requesting the sum of $1,639.78 which was amended to request $1,221.96. The pendency of this motion explains the amount of Clark's offset bid. However, the motion was denied on April 22, 1980 by Judge Johnstone.

2. AS 09.35.180 provides:

Confirmation of sale or resale. (a) Where real property executed upon has been sold, the judgment creditor may, upon motion, apply for an order confirming the sale. The

On September 28, 1981, Clark moved ex parte for issuance of a deed of conveyance. Judge Victor Carlson, acting in the absence of Judge Johnstone ordered issuance of such a deed on that day.[3]

On October 12, 1981 Altman moved pursuant to Civil Rule 60(b) to set aside the order of confirmation and the order directing issuance of the deed. Judge Johnstone granted the motion and required Clark to reconvey the property to Altman in exchange for $388.13. From this order Clark appeals.

Trial court decisions under Civil Rule 60(b) are discretionary, reviewable only for an abuse of discretion. *Aguchak v. Montgomery Ward Co., Inc.*, 520 P.2d 1352, 1354 (Alaska 1974). A reviewing court applying this standard will only reverse a trial court's ruling if it is left with a definite and firm conviction on the whole record that the trial judge has erred. *Guard v. P & R Enterprises*, 631 P.2d 1068, 1071 (Alaska 1981); *Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980). We do not have such a conviction in this case and hold that the trial court's order was proper under Civil Rule 60(b)(6)[4] for the following reasons.

First, Clark's September 1981 motion for issuance of a deed was not served on Altman. Civil Rule 77(a), which requires service of all motions upon the adverse party or his counsel, was thus violated.[5] Civil Rule 5(a) provides an exception to this rule in that "No service need be made on parties in default for failure to appear...."[6]

judgment debtor may object to the confirmation of the sale on the grounds that there were substantial irregularities in the proceedings of sale which caused probable loss or injury to the judgment debtor.
(b) If the court finds that there were substantial irregularities in the proceedings concerning the sale to the probable loss or injury to the party objecting, it shall deny the motion and direct that the property be resold in whole or in part as upon an execution.
(c) Upon a resale, the bid of the purchaser at the former sale shall be considered to be renewed and continued in force, and no bid may be taken except for a greater amount. If the property sells to a person other than the former purchaser, he shall be repaid his bid out of the proceeds of the resale.
(d) An order confirming a sale is a conclusive determination of the regularity of the proceedings concerning the sale, as to all persons, in any other action or proceeding.

3. The deed was issued pursuant to AS 09.35.260 which provides:
Conveyance of property. If no redemption is made within the time prescribed, the purchaser or last redemptioner is entitled to a conveyance. If the judgment debtor redeems, the effect of the sale is terminated and he is restored to his estate.
The time prescribed for redemption is one year from the order of confirmation. AS 09.35.250 provides:
Redemption by judgment debtor or successor. The judgment debtor or his successor in interest may redeem the property before the confirmation of sale on paying the amount of the purchase money, with interest at the rate of eight per cent a year from the date of sale, together with the amount of any taxes, and, in the case of unpatented mining claims, the annual assessment work required to be performed by law, and expenses under § 300(b) of this chapter which the purchaser or redemptioner may have paid after the purchase. If the judgment debtor does not redeem before the confirmation of the sale, he may redeem only within 12 months from the order of confirmation.

4. Civil Rule 60(b)(6) provides:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

.....
(6) any other reason justifying relief from the operation of the judgment.

5. Civil Rule 77(a) provides:
All motions, orders to show cause, petitions, applications and every other such matter shall be served upon the adverse party, or, after the adverse party has appeared by counsel, upon counsel for the adverse party.

6. Civil Rule 5(a) also recognizes that motions which may be heard ex parte do not require service. This recognition cannot be read as a broad exception to the requirement of service expressed in Civil Rule 77(a) and is limited to situations in which ex parte motions are authorized by rule. *See, e.g.*, Civil Rule 65(b), 77(i)(3). In 2 J. Moore, Moore's Federal Practice ¶ 5.04[1] at 1329–30 n. 12 (2d ed. 1983) examples are given of motions which can be heard ex parte under the comparable provisions of Rule 5(a) Fed.R.Civ.P. All examples are specifically authorized by other sections of the Federal Rules.

However, Altman was not such a party because he had appeared prior to the time that Clark made his motion for issuance of the deed. Clark contends that notice may be dispensed with because issuance of the deed was a mere ministerial act and the trial court had no discretion other than to grant the motion. The argument is, in other words, that notice is unnecessary where the motion cannot be opposed successfully. We do not regard this argument as meritorious. Motions which appear clearly right when unopposed often become doubtful when opposition is filed. Altman could have presented in defense most of the contentions which he later made in his motion to set aside the resulting order and it serves no useful purpose to speculate whether the motion for issuance of a deed would have been granted under those circumstances.

Second, the fact that Clark made an offset bid in excess of $2,000 on a judgment of $388.13 is a substantial irregularity. This irregularity is relevant to the validity of the confirmation order and to the redemption remedy. The latter point has special importance because the record indicates that as of July 25, 1980, and continuing thereafter, Clark took the position in dealing with Altman that the redemption price was "the full value of the offset bid, plus interest and attorney's fees." [7] This was an over statement of the redemption price by more than five-fold. Such an overstatement has a natural tendency to deter exercise of the right to redeem.

■ The suggestion in the dissent of Chief Justice Burke that overstatement of the offset bid is not an impropriety because

a redeeming judgment debtor is entitled to a court ordered refund of the difference between the offset bid and the correct redemption price is unpersuasive. First, a judgment debtor may not have the money to pay the inflated bid, and may lack the resources to obtain it. Second, the right to a refund may be contested and thus obtaining a refund may be an expensive and uncertain remedy. Under the procedures mandated by Civil Rule 69(e)(3) [8] Clark should have paid the price in excess of the judgment and costs to the Clerk of Court who, upon entry of the order confirming the sale should have paid the same to Altman. Had these procedures been followed the defect of the inflated offset bid would have been cured. However, these procedures were not followed.

Third, the property had substantial value. According to one estimate its worth, without deducting encumbrances, was $750,000.[9] It was apparently subject to a substantial purchase money lien covering it and other property.[10] The amount of the encumbrance attributable to the property sold is not of record, but we are told that Altman's total payment during 1980 and 1981 on the purchase money lien amounted to $488,258.55. The court's conclusion that the property sold was very valuable in contrast to the trivial amount unpaid on the judgment seems amply justified.

Fourth, in response to Altman's attempt, made in May of 1980, to have the court reconsider its order reinstating the default judgment, Clark represented that "all but approximately $100 of the judgment entered against defendant has been satisfied by payment of the bond in this case : ...," thereby contending that Altman was "es-

7. Between May 8, 1980 and July 25, 1980 Clark had offered $1,000.00 as the redemption price which he would accept.

8. Civil Rule 69(e)(3) provides:
   Disposition of Proceeds of Sale. After entry of an order confirming sale of real property, the clerk shall apply the proceeds of the sale, or so much thereof as may be necessary in satisfaction of the judgment and costs. Any proceeds remaining shall be paid to the judgment debtor. Such payments shall be made prior to the entry of the order of confirmation

if the judgment debtor files with the clerk a waiver of all objections made or to be made to the proceedings concerning the sale.

9. Altman's counsel argued that the net value of the property was in excess of $600,000.00.

10. The record does not disclose the value of the other property. The lien was $811,384.56 as of December 2, 1981. In addition, a 1981 title report showed some $97,000.00 in judgment liens against all property owned by Altman.

topped from moving to set aside the judgment on the grounds of substantial accord and satisfaction." Clark's statement that all but about $100 of the judgment had been satisfied contrasts with his later representation to Altman that the full amount of the offset bid had to be paid in order to accomplish redemption.

Fifth, the relationship between Clark and Altman is that of an attorney attempting to collect a fee from a former client. "[T]he fiduciary character of the relation between client and lawyer applies to the ... collecting ... of fees just as it does to every other phase of the relationship." R. Wise, Legal Ethics at 234 (2nd Ed.1970). Clark was thus bound to conduct himself fairly and reasonably toward Altman. In the manner detailed above these standards were not observed with the exactitude required in a lawyer-client context.

AFFIRMED.[11]

MOORE, J., not participating.

BURKE, Chief Justice, with whom COMPTON, Justice, joins, dissenting.

I dissent.

In April 1979, Murphy Clark, an attorney, provided legal services to the defendant, David Altman, also an attorney. When Altman refused to pay for the services, Clark sued to recover the money owed. Despite proper service, Altman failed to appear in or respond to the lawsuit, and default judgment was entered against him in the amount of $5,799.70.

On March 18, 1980, the court ordered that a bond posted by Altman be turned over to Clark. This left $388.13 still owing under the default judgment order. To satisfy this debt, Clark caused real property owned by Altman to be sold at an execution sale on April 22, 1980.[1] At the sale, Clark purchased the property for $2,070.49.

In August 1980, Clark moved for confirmation of the sale pursuant to AS 09.35.180 and mailed Altman a copy of the motion. Altman failed to respond to the motion and on September 27, 1980, the trial judge signed the confirmation order. Subsequent to the sale, Altman made no attempt to redeem the property under the procedures set forth in AS 09.35.250, although he was advised by his attorney that there were time limitations on his ability to redeem the property. Twelve months after the date of the confirmation order, Clark moved ex parte for issuance of the deed of conveyance, pursuant to AS 09.35.260, and on September 28, 1981, the trial judge signed the order.

On October 12, 1981, pursuant to Civil Rule 60(b), Altman moved for relief from both the confirmation order and the order to issue the deed of conveyance. On December 15, 1981, the trial court granted the relief requested by Altman. Clark now appeals the trial court's decision setting aside the two orders.

## I

I first address the propriety of the trial court's decision to set aside the confirma-

---

11. We do not accept the statement in the dissent of Justice Compton that we have "judicially repealed" AS 09.35.180(d). That subsection, which is set forth above in footnote 2, applies to "any other action or proceeding" and thus precludes collateral but not direct attacks on orders of confirmation. Since a Civil Rule 60(b) motion is a direct attack it is not prohibited by subsection 180(d). 7 J. Moore, Moore's Federal Practice ¶ 60.41[1] at 801 (2d ed. 1979). In *Mallonee v. Grow,* 502 P.2d 432 (Alaska 1972) we affirmed an order which granted a Rule 60(b) motion to set aside an order confirming an execution sale.

1. According to an appraisal ordered by Altman, the property had an estimated value of $750,000 as of December 7, 1981. Altman's bank report, however, indicated that as of December 2, 1981, the outstanding balance on Altman's purchasing loan was $811,384.56. Although statements by Altman's counsel at oral argument implied that this loan amount included other property as well, there is nothing in the record to support this assertion. There are also several judgment and construction liens on the property. The record that is before us, therefore, fails to persuade me that Clark's execution on this property, in satisfaction of a $388.13 debt, is so unconscionable as to warrant setting aside the sale.

tion order.[2] Unless the issue presented by a Rule 60(b) motion involves strictly a question of law, the standard for appellate review is that of abuse of discretion. *See Aguchak v. Montgomery Ward Co., Inc.*, 520 P.2d 1352, 1354 (Alaska 1974). A reviewing court applying this standard will only reverse a trial court's ruling if it is left with the definite and firm conviction on the whole record that the trial judge has made a mistake. *Guard v. P & R Enterprises, Inc.*, 631 P.2d 1068, 1071 (Alaska 1981); *Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980).

The record in this case indicates that Clark made a properly noticed motion for confirmation.[3] This motion went unopposed and the trial judge signed the order on September 27, 1980. Altman did not file a motion for reconsideration of the confirmation order pursuant to Civil Rule 77(m). Nor did Altman appeal the confirmation order within thirty days as required by Appellate Rule 204(a).[4] Not until October 31, 1981, did Altman attempt to attack the confirmation order, by filing a Rule 60(b) motion for relief. In support of the motion for relief from the confirmation order, Altman argued that relief should be granted for the reasons contained in subdivisions (3), (4), (5) and (6) of Civil Rule 60(b), and

because Clark allegedly committed fraud upon the court.[5]

"This court has emphasized that a Rule 60(b) motion is not a substitute for the usual appellate mechanism." *Anderson v. State, Department of Highways*, 584 P.2d 537, 540 (Alaska 1978). Rule 60(b) provides that motions "shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the ... order ... was entered." Because Altman moved for relief from the September 27, 1980, confirmation order on October 13, 1981, more than a year later, I would hold that relief from the confirmation order was not available under subdivision (3) of the rule.

I would likewise hold that Altman's motion for relief based on subsections (5) and (6) was untimely. While Rule 60(b)'s one year limitation period is inapplicable, motions for relief based on subsections (5) and (6) are required to be filed "within a reasonable time." In *Alaska Truck Transport, Inc. v. Berman Packing Co.*, 469 P.2d 697, 700 (Alaska 1970), we interpreted the phrase "reasonable time" as used in Civil Rule 60(b). There, this court struck a balance between the interest of finality of judgments and the need to correct injustices by interpreting "reasonable time" to require "that Rule 60(b) motions based on errors of law be brought within the time

---

**2.** Under AS 09.35.180, after an execution sale takes place, the judgment creditor may move for an order confirming the sale. The judgment debtor may object to the confirmation on grounds that there were substantial irregularities in the proceedings. If the court finds no substantial irregularities, it will confirm the sale. AS 09.35.180(d) provides:

> An order confirming a sale is a conclusive determination of the regularity of the proceedings concerning the sale, as to all persons, in any other action or proceeding.

The date of the confirmation order also marks the beginning of the twelve month period within which the judgment debtor may redeem the property under AS 09.35.250.

**3.** Clark made service on Altman at his Chicago address. This address was the same one used by Altman's attorney. The trial court on November 1, 1979, deemed service at this address to be fully effective to provide notice to Altman.

**4.** This case is unlike *Queen of the North, Inc. v. LeGrue*, 582 P.2d 144, 147 (Alaska 1978). There

the judgment debtor filed a timely appeal from the trial court's order of confirmation; we reversed and remanded upon finding substantial irregularity in the sale.

**5.** Alaska R.Civ.P. 60(b) provides in part:

> On motion ... the court may relieve a party ... from a final ... order ... for the following reasons:
> (1) mistake, inadvertence, surprise or excusable neglect;
> (2) newly discovered evidence ...;
> (3) fraud ... misrepresentation or other misconduct of an adverse party.
> (4) the judgment is void
> (5) the judgment has been satisfied....
> (6) any other reason justifying relief from the operation of the judgment.
> ... This rule does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court.

for taking an appeal, i.e., within thirty days from the entry of judgment." *Id.*

I find the reasoning in *Alaska Truck Transport* to be equally persuasive with regard to subsections (5) and (6). Nor do I see any compelling circumstances in this case which would tip the scales in favor of relaxing the "reasonable time" limitations for filing under Rule 60(b). *Id.* at 700. Therefore, relief under subsections (5) and (6) was unavailable because of Altman's failure to move in a timely manner.[6]

Altman also sought relief based on subsection (4) of Civil Rule 60(b). When relief is sought under Rule 60(b)(4), on the ground that the judgment is void, no time limits are applicable. A void judgment cannot acquire validity because of laches on the part of the adverse party. 11 C. Wright and A. Miller, Federal Practice and Procedure § 2862, at 198 (1973). Altman alleges that Clark's failure to provide him with notice of the order to issue the deed of conveyance deprived him of due process and therefore rendered the deed of conveyance order and the earlier confirmation order void.

This argument lacks merit. Any alleged defect in notice of the order to issue the deed of conveyance would not affect the validity of the order of confirmation which was properly served more than a year earlier. The trial court, therefore, could not properly set aside the confirmation order based upon Rule 60(b)(4).

The only ground alleged by Altman which would be available to set aside the confirmation order is "fraud upon the court." "The term 'fraud upon the court' contemplates conduct so egregious that it undermines the integrity of the judicial process." *Stone*, 647 P.2d at 586. Altman's allegations of "fraud upon the court," however, fall short of demonstrating its existence.

Altman alleges that, although Clark knew that his motion for attorney fees had been denied at the time he bid on the property, Clark improperly included this amount in his bid. Clark denied any wrongdoing, stating that he was notified of the order denying its attorney fees by mail received on May 1, 1980, after the execution sale had taken place. The record supports Clark's assertion, since the order denying attorney fees was not mailed to counsel until April 29, 1980.

Furthermore, Altman cites no case law which supports the proposition that a judgment creditor, as purchaser, can bid no more for the property than the debt owed. It would be to the judgment debtor's advantage to have the creditor bid as high as possible where the debtor has no intention of redeeming the property since under Civil Rule 69(e)(3), the debtor is entitled to the purchase price minus the judgment debt. Nor would a debtor planning to redeem the property be disadvantaged by a high bid. The debtor would in fact only suffer the out of pocket expense of paying the amount of the debt in order to redeem the property, regardless of the value of the creditor's bid, since under Civil Rule 69(e)(3), AS 09.35.110, the bid amount exceeding the judgment debt would already be in the debtor's possession.

Altman also alleges that Clark knew that the judgment had been fully satisfied prior to the time of the execution sale. However, this is factually incorrect. The trial court recognized that $388.13 was still owing to Clark after relinquishment of the bond.

Altman's claim of "fraud upon the court" boils down to his perception that he was placed in the position of having to choose between paying Clark "sums disallowed by the court in order to redeem the property ... or ... forfeit[ing] ... a valuable parcel of real property." This is an entirely inaccurate characterization.

First, Altman, as a diligent litigant, could have responded to Clark's properly noticed motion for confirmation and attacked the

---

6. Under Alaska R.Civ.P. 6(b), the trial judge was expressly prohibited from extending the time for moving for relief under Alaska R.Civ.P. 60(b). *Stone v. Stone*, 647 P.2d 582, 585 (Alaska 1982).

legality of the execution sale. Instead, Altman, an experienced attorney, refused to respond to Clark's motion for confirmation of the sale, even though a similar strategy had earlier resulted in a default judgment against him.

Second, after confirmation, Altman could have moved for a clarification of the money amount owed on the default judgment after relinquishment of the bond. Altman could then have redeemed his property by paying the amount of the debt still owed on the default judgment ($388.13) to Clark within twelve months from the date of the confirmation order. No forfeiture would then have resulted.

Because Altman failed to make an adequate showing of "fraud upon the court," and moved for relief under Rule 60(b) in an untimely manner, I would hold that the trial court erred in setting aside the September 27, 1980 confirmation order.

## II

I next address the propriety of the trial court's decision to set aside the order to issue the deed of conveyance. The trial court set aside the order because of Clark's failure to provide Altman with notice of its motion for issuance of the deed. If notice was required, a failure to provide such notice would violate Civil Rules 5 and 77, and render the deed of conveyance order void. Subsection (4) of Rule 60(b) would then provide a basis for setting aside the order.[7]

Civil Rule 5(a) provides in part:

[E]very written motion other than one which may be heard ex parte ... shall be served upon each of the parties but no service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be

served upon them in the manner provided for service of summons in Rule 4.

There are, therefore, two exceptions to the notice requirement. First, no notice need be given to a party in default for failure to appear unless the motion constitutes "pleadings asserting new or additional claims for relief." Second, no service need be made on a party if the motion is ex parte. If Clark's motion for issuance of the deed of conveyance falls within either of these exceptions, the trial court erred in setting aside the order to issue the deed of conveyance.

This court previously considered the Rule 5(a) defaulting party exception in *Lunsford v. Kaiser Gypsum Co., Inc.,* 516 P.2d 151 (Alaska 1973). In *Lunsford,* the defendants suffered a default judgment and the plaintiff enforced the judgment by causing a sale of the defendants' real property. After the sale and its confirmation, the defendants moved to set aside the sale because the plaintiff failed to serve them with notice of the motion for confirmation. This court held:

The record does not show that the [defendants] were served with the motion for confirmation, but because the [defendants] had defaulted on the underlying claim, no service is required under Civil Rule 5(a).

*Id.* at 152 (footnotes omitted).

In *Lunsford,* however, the defendants had not yet made a general appearance in the action at the time that the confirmation motion was filed. In the case at bar, Altman had appeared in the action prior to the time that Clark filed his motion for issuance of the deed of conveyance.[8]

Where a party is given notice of the claim against him, failure to appear and defend against the claim is interpreted by the court to be an informed decision by the defendant to accept liability for the sum

---

7. The standard for appellate review of this Rule 60(b) decision is not abuse of discretion since the issue of notice is strictly a question of law. *See Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352, 1354 (Alaska 1974).

8. Prior to Clark's motion to issue the deed of conveyance, Altman had filed two motions to set aside the default judgment and an answer. These constituted a general appearance before the court. *Anderson v. Taylorcraft, Inc.,* 197 F.Supp. 872, 874 (W.D.Pa.1961).

named in the complaint.[9] In addition, the court presumes the defaulting party's consent to the various motions and orders which naturally flow from the complaint filed, and notice of these need not be provided to the defaulting party. This assumption, however, is valid only to the extent that the motions are in furtherance of and consistent with the original properly noticed complaint. The assumption does not apply if new or additional claims for relief are asserted.

Once the defaulting party makes an appearance, however, it is no longer appropriate for the court to presume consent to post-appearance matters. All motions must be served on a party who has appeared in an action, despite the fact that the party was previously in default. Because Altman had already appeared in the action at the time Clark moved for issuance of the deed of conveyance, Clark was not excused from serving Altman with a copy of the motion under the defaulting party exception of Rule 5(a).

The next question is whether the motion to issue the deed of conveyance fell within the ex parte motion exception to Rule 5(a). An ex parte motion is defined as a motion which is "taken or granted at the instance and for the benefit of one party only and without notice to ... any person adversely interested." Black's Law Dictionary, 662 (4th ed. 1968). Due process under the Alaska and federal constitutions requires that a party be given notice and an opportunity to be heard prior to issuance of a court order which deprives that party of a protected property interest. *See F/V American Eagle v. State*, 620 P.2d 657, 666 (Alaska 1980); *Frontier Saloon, Inc. v. Alcoholic Beverage Control Board*, 524 P.2d 657, 659 (Alaska 1974). Thus, an ex parte motion can also be defined as a motion which the court may act upon without violating the due process rights of an individual who has no notice of the proceedings.

The procedural due process analysis is two-staged. First, there must exist a property or liberty interest of sufficient importance to warrant constitutional protection. *Herscher v. State*, 568 P.2d 996, 1002 (Alaska 1977). Procedural due process protections apply only where a person is faced with deprivation "of a property interest that 'cannot be characterized as de minimis.'" *Etheredge v. Bradley*, 502 P.2d 146, 151 (Alaska 1972) (*quoting Fuentes v. Shevin*, 407 U.S. 67, 89 n. 21, 92 S.Ct. 1983, 32 L.Ed.2d 556, 574 n. 21 (1972)). After finding that the importance of the interest warrants due process protection, the court must then assess the appropriate measure of procedural protection due. *Nichols v. Eckert*, 504 P.2d 1359, 1363 (Alaska 1973); *Colm v. Vance*, 567 F.2d 1125, 1127–28 (D.C.Cir.1977).

Applying this analysis to the case at bar, I conclude that the order to issue the deed of conveyance deprived Altman of only a de minimis property interest, not a constitutionally protected interest. Therefore, the motion was properly characterized as an ex parte motion, and Clark was not required to serve notice of the motion on Altman under Civil Rule 5(a).

In Alaska, as in Oregon and Washington, the purchaser at an execution sale acquires only the equitable title to the property. This equitable title is then subject to defeasance through redemption by the judgment debtor, who holds the bare legal title. Legal title does not pass to the purchaser until the redemption period has run and the court has conveyed the property to the purchaser by a deed of conveyance. *Haskin v. Greene*, 205 Or. 140, 286 P.2d 128, 133 (1955); *Ferry County Title & Escrow Co. v. Fogle's Garage, Inc.*, 4 Wash.App. 874, 484 P.2d 458, 462 (1971).

At the time that the deed of conveyance was issued, the bare legal title still held by Altman was a de minimis interest. Prior to

---

9. "When the action is for a sum certain the default is an admission not only of the right to recover, but of the amount of the damages." *Monte Produce, Inc. v. Delgado,* 126 Ariz. 320,

614 P.2d 862, 864 (1980) (*citing Skidmore v. Pacific Creditors,* 18 Wash.2d 157, 138 P.2d 664 (1943)).

issuance of the deed of conveyance, it was Clark, not Altman, who held the possessory interest in the property. Clark was also entitled to receive the rents of the property and the value of the use and occupation of the property. AS 09.35.310. The only valuable property interest held by Altman after the execution sale was the right to redeem the property. Altman lost this right not through any action of Clark or the court, but rather by the expiration of a time period. The loss of the right to redeem is analogous to the loss of a cause of action through the running of a statute of limitations. At the time the deed of conveyance was issued, this valuable property right was a de minimis interest since the twelve month period for redemption had already run.

After the redemption period had run, Altman's bare legal title could be conveyed to Clark, upon motion, as a matter of course. AS 09.35.250 provides that after the execution sale is confirmed, the judgment debtor has only twelve months from the date of the confirmation order within which to redeem the property. "If no redemption is made within the time prescribed, the purchaser . . . *is entitled* to a conveyance" AS 09.35.260 (emphasis added). "[T]he issuance of a sheriff's deed upon expiration of the redemption period becomes a ministerial act not requiring the assistance of a court." *Ferry County Title & Escrow Co. v. Fogle's Garage, Inc.,* 484 P.2d at 462. If the property is not redeemed within the allowable time period, "the right to a conveyance becomes absolute without any further sale or other duty to be performed by anybody." *Haskin v. Greene,* 286 P.2d at 133.

Clark's failure to serve Altman with notice of the motion to issue the deed of conveyance did not violate Altman's procedural due process rights; nor did it violate Civil Rules 5 and 77 as the motion fell within the ex parte motion exception to Rule 5(a)'s requirement of notice.[10] I therefore would hold that the trial court erred in setting aside the order to issue the deed of conveyance.

COMPTON, Justice, dissenting.

I join with Chief Justice Burke's dissent, but wish to add a few observations of my own. The court states that the first reason for affirming the superior court is that "Clark's motion for issuance of a deed was not served on Altman." 680 P.2d 1125, 1127 (Alaska 1984). Notice is now made a requirement for issuance of a deed of conveyance. The practical significance of this is that it may have a substantial effect on the marketability of land titles.

We have held that a title is not marketable if "a conveyance carries with it a reasonable probability that the purchaser will be subject to a lawsuit." *Ficke v. Alaska Airlines, Inc.,* 524 P.2d 271, 276 (Alaska 1974) (citations omitted). Marketability has also been subject to the following test: "A 'marketable title' refers to the state of title of the property as derived from the record of conveyances or other public record." *Schreiber v. Karpow,* 290 Or. 817, 626 P.2d 891 (1981); *see also Tri-State Hotel Co. v. Sphinx Investment Co.,* 212 Kan. 234, 510 P.2d 1223 (1973); *Chavez v. Gomez,* 77 N.M. 341, 423 P.2d 31 (1967).

I assume that in the past, title to property subject to judicial foreclosure was generally marketable upon recordation of a deed

---

**10.** Appellee cites *Municipality of Anchorage v. Wallace,* 597 P.2d 148 (Alaska 1979) as standing for the proposition that the due process clause mandates notice of the final action taken in foreclosing redemption rights to real property. This is a misstatement of *Wallace.* There the court was dealing with tax foreclosed property. The statutes applicable to this type of foreclosure provide that, the debtor may repurchase the property at any time prior to resale of the property by the city or borough, even though the redemption period has run. But if the city and borough decide to hold the property for a public purpose, instead of reselling it, the debtor has *no* right to repurchase the property once the redemption period has run. AS 29.53.370, .375. There is, therefore, a statutory right to redeem the property after the redemption period has expired, provided the property is not held for a public purpose. In *Wallace,* this court held that the tax debtor was entitled to notice of the hearing at which the municipality was to decide whether to keep the property for a public purpose or re-sell it.

of conveyance issued one year after the confirmation of sale. AS 09.35.260 states that the purchaser *is entitled* to a convey-ance if there has been no redemption during the one-year period. The conveyance under section 260 is merely a ministerial act. *See Ferry County Title & Escrow Co. v. Fogle's Garage, Inc.*, 4 Wash.App. 874, 484 P.2d 458, 462 (1971). Recordation of the deed of reconveyance provided a sufficient record for marketability. Since issuance of the deed of reconveyance was only ministerial a purchaser would not be subjected to a reasonable probability of a lawsuit. Protection was afforded by AS 09.35.180(d).

As a result of this decision, persons who apply for a conveyance without recordation of a notice of application therefor and proof of service of that notice, may have an unmarketable title. Under the test set forth in *Ficke*, title would be unmarketable because the purchaser could reasonably be subjected to a lawsuit. Also, the record of conveyances would be incomplete and title would be unmarketable under the "derived from records" test. It is certainly foreseeable that service of this notice may be lacking in judicial foreclosures. Owners of property which is judicially foreclosed do not always maintain any personal interest in the property. Some simply walk away from the property and may not easily be found a year later. As shown above, the marketability of title to such property would be impaired due to the lack of proof of service of notice.

1. The court, as it must, does "not accept" my statement that it has judicially repealed AS 09.-35.180(d). To accept my statement would be to concede that it is legislating, rather than adjudicating.

First, the court asserts that a Civil Rule 60(b) motion is a direct attack on the judgment. Therefore, it is not prohibited by subsection 180(d), which prohibits only collateral attacks. The court cites no authority for its sweeping conclusory statement, nor can I find any. The language of subsection 180(d) does not compel the conclusion. It comes as somewhat of a surprise to me that a post judgment Rule 60(b) motion is not a "proceeding" as that term is commonly understood.

. I believe the court's decision will have an undesirable effect on real property conveyancing. It will lead to instability in land titles. And, even though the court chooses to deny it, the court has judicially repealed AS 09.35.180(d).[1]

For these reasons and those set forth by Chief Justice Burke, I dissent.

Second, the court cites *Mallonee v. Grow*, 502 P.2d 432 (Alaska 1972) for the proposition that a Rule 60(b) motion is a proper device for setting aside an order confirming an execution sale. What the court held in *Mallonee* is that the "reasonable time" and "one year" limitations contained in Rule 60(b) do not bar a motion to vacate a sale on the ground of fraud upon the court. The court's power is expressly reserved in the explanatory paragraph following Rule 60(b)(6). Mallonee did not give Grow notice under AS 09.35.180(a) that he was moving for an order confirming sale, unlike the case at bar in which notice was given. Grow never had an opportunity to avail himself of the one year redemption period, because of the fraud practiced upon him *and* the court.